THE PEOPLE OF THE STATE OF NEW YORK ex rel. DELAWARE, LACKAWANA AND WESTERN RAILROAD COMPANY et al., Respondents, *v.* FRANK WILDY et al., Constituting the Town Board and Board of Highway Superintendents of the Town of Cheektowaga, Appellants.

(Argued April 21, 1933; decided May 23, 1933.)

*Carlton A. Fisher* for appellants.

*Harold S. Brown* for respondents.

LEHMAN, J. An assessment for the construction and maintenance of a sewerage system has been imposed upon the lands of the Delaware, Lackawanna and Western Railroad Company within a sewer district, established pursuant to statute, in the town of Cheektowaga. Upon a review in certiorari proceedings, the assessment has been annulled on the ground that the property of the railroad company received no benefit from the construction and operation of the sewer system and was not subject to any assessment.

The statute at that time required that assessments for the construction of a sewer must be imposed upon lots or parcels of land within a sewer district " in proportion as nearly as may be to the benefit which each lot or parcel will derive therefrom." (Town Law [Cons. Laws, ch. 62], § 237.) The local authorities, upon whom the duty of preparing the assessment rolls rests, have jurisdiction to determine the amount of the benefit which will be derived; but where there is no benefit there can be no assessment.

In this case the parcel of land, belonging to the relator, which has been assessed consists of 149.54 acres. The main right of way of the railroad company from Buffalo, New York, to Hoboken, New Jersey, running through this parcel is included therein. The larger part of the parcel is used as a railroad yard. With the exception of about twenty-six acres, the entire parcel is used for railroad operation, and even these twenty-six acres have never been used for other than railroad purposes. There are some structures in the railroad yard but none of these structures have been connected with the sewer system. Apparently more primitive methods of disposing of waste and effluvia suffice for the purposes of railroad operation. Upon these facts the courts below have determined that the assessment is illegal.

" Whether or not a particular parcel of land has been benefited by a particular improvement is ordinarily a

question of fact. The test is not whether as now used by its present owner any advantage is received but whether its general value has been enhanced." (*Matter of City of New York [Juniper Avenue]*, 233 N. Y. 387, 392.) Though no advantage to the land as now used by the railroad company is derived from the maintenance of the sewer, the question remains whether the " general value " of the land has been enhanced. The local authorities have determined that the " general value " of the land has been enhanced and have fixed the amount of the benefit. The assessment is attacked on the ground that in making that determination they exceeded their jurisdiction. The attack must fail if a question of fact was present. " It is immaterial whether land is owned by a railroad company or by a church or by an individual unless we can say as a matter of law that the improvement may not by any possibility increase the value of the property. If we cannot, the extent of the benefit is for the determination of the commissioners." (*Matter of City of New York [Juniper Avenue]*, *supra.*)

In that case we held it could not be said as a matter of law that land used by a railroad company for a railroad yard derived no benefit from the opening of a street. The improvement might increase the market value of the land and the owner could by a sale obtain the benefit of the advance. Again in *N. Y. C. & H. R. R. R. Co.* v. *City of Yonkers* (238 N. Y. 165, 173), we held that an assessment for a street opening, placed upon property used for railroad purposes, was within the jurisdiction of the tax assessors. " There is no statute which exempts the property of a railroad company from assessment for local improvement. Its yards, terminals or storage plants may be greatly enhanced in value by local improvements. It is only where the railroad's right-of-way is so used that it gives evidence of a permanent user for railroad purposes that we have held that the railroad cannot be assessed. These were facts for the assessors to determine."

What we said and decided in those cases compels the conclusion that here the assessment was not illegal. We are dealing with the benefit that may be derived from a new sewer system. We have heretofore left open the question of whether it can be said that as matter of law even land permanently used by a railroad company for a right of way might not derive some benefit from such an improvement. (*Matter of City of New York* [*Juniper Avenue*], *supra.*) We do not decide that question now, for even though the railroad right of way is included in the parcel of land owned by the railroad company upon which the assessment has been imposed, no apportionment of benefit to particular parts of the whole parcel was asked or made. The parcel was treated as a unit in determining the benefit and it does not appear whether the local authorities found that the portion used as a right of way derived any substantial benefit from the improvement.

The portion used by the railroad company for railroad yards presents a different problem. The right of way through this parcel could not be appropriated to other uses without destroying the continuity of the railroad. The railroad yards could be sold if the owner decided that it would be more economical to provide substituted facilities elsewhere. Though such action may be very improbable, its possibility is not excluded. Moreover, even while the property is used as a railroad yard it might derive some benefit from the sewer. Because the railroad company has not chosen to connect its yards with the sewers, it does not follow that it may not find it to its advantage to do so in the future. (Cf. *Syracuse, B. & N. Y. R. R. Co.* v. *Van Amburgh*, 223 App. Div. 485; affd., 251 N. Y. 548.)

Finally, it is quite clear that the portion of the parcel not yet devoted to any railroad purposes derives some measure of benefit from the improvement. The market value of that vacant land has presumably increased.

The railroad company is free to sell or to use that land for railroad purposes. Whether in the future the railroad company chooses one course or the other is immaterial. The test is whether the "general value" of the land "is enhanced," not whether its value has been increased for the particular use to which the owner may choose to put it. Only where land is permanently and irrevocably appropriated to a particular use can benefit to the land be measured or limited by benefit for a particular use.

The orders of the Special Term and of the Appellate Division should be reversed and the determination reviewed confirmed, with costs in all courts.

POUND, Ch. J., CRANE, KELLOGG, O'BRIEN and CROUCH, JJ., concur; HUBBS, J., not sitting.

Orders reversed, etc.